JUDGE CROTTY

Michael J Sheppeard (MS 9115)
BALLON STOLL BADER & NADLER, P.C.
729 Seventh Avenue • 17th Fl
New York, New York 10019
212-575-7900
*Attorneys for Plaintiff*

09 CV 8185

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MAPSSY INTERNATIONAL, INC.

*Plaintiff,*

-against-

MARC GARDNER, CINQ, LTD, US TOP IMPORTERS, INC. d/b/a PIANO & PIANO SPORTSWEAR, BAHRAM NOPARVAR, AZIDOR, INC., MARLON, SYRUS FOUROUZESH, BRAD NOWPARVAR, JOHN DOES 1-10, and XYZ CORP. 1-10,

*Defendants.*

---

Case No.:



COMPLAINT

**JURY TRIAL DEMANDED**

Plaintiff, Mapssy International, Inc., ("Mapssy"), by its attorneys, Ballon Stoll Bader & Nadler, P.C., for its complaint against Defendants, alleges, under information and belief, as follows:

### JURISDICTION AND VENUE

1. This is an action for trademark infringement in violation of the Lanham Act, for federal unfair competition, common law unfair competition, and breach of contract, among other things, in violation of the laws of the United States of America and the State of New York.

2. This Court has jurisdiction over the subject matter of this lawsuit pursuant to Lanham Act, 15 U.S.C. § 1121 and 1125(a), 28 U.S.C. § 1331, 1338, 1367 and principles of

{00121927;6}

supplemental jurisdiction, in that the case arises under the laws of the United States and, in particular, the Lanham Act.

3.  Venue is proper in this district under 28 U.S.C. §1391 (b)(2) and (b)(3) and 28 U.S.C. §1391 (c) in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

4.  Plaintiff Mapssy is a corporation existing under the laws of the State of New Jersey, maintaining a principal place of business of 70 Moonachie Avenue, Moonachie, New Jersey 07074.

5.  Defendant Marc Gardner ("Gardner") is an individual, with a business address of 1410 Broadway, New York, New York 10018.

6.  Defendant Cinq, Ltd. ("Cinq") is a corporation with a business address of 1410 Broadway, New York, New York 10018.

7.  Defendant US Top Importers, Inc. d/b/a Piano & Piano Sportswear ("Piano") is a corporation with a business address of 2171 East 25th Street, Los Angeles, CA 90058.

8.  Defendant Bahram Noparvar ("Noparvar") is a principal of Piano with a business address of 1089 N. Hillcrest Rd., Beverley Hills, CA 90210.

9.  Defendant Azidor, Inc. ("Azidor") is a corporation with a business address of 1141-B S Wall Street, Los Angeles, California 90015.

10. Defendant Marlon is believed to be an entity with a business address of 2171 East 25th Street, Los Angeles, CA 90058.

11. Defendant Syrus Fourouzesh ("Fourouzesh") is a principal of Azidor with a business address of 1141-B S Wall Street, Los Angeles, California 90015.

12.     Defendant Brad Nowparvar ("Nowparvar") is a principal of Azidor with a business address of 1141-B S Wall Street, Los Angeles, California 90015.

13.     John Does 1 – 10 and XYZ Corp. 1 – 10, whose true names are unknown to Plaintiff, but are believed to be business partners and/or affiliate corporations working with Defendants.

## FACTS

14.     **Brief Overview.**     Plaintiff has been continuously selling garments bearing the Agora mark since July 2006. The latest yearly sales for garments bearing the Agora mark by Plaintiff totaled approximately $8,000,000.00, and nearly $7,000,000.00 is expected this year. Recently, Plaintiff discovered that Gardner, a former sales representative of Plaintiff who was responsible for the sale of garments bearing the Agora mark, began selling garments under the Agora mark in concert with the other Defendants.

15.     **History of Plaintiff.** Plaintiff was established in or about 1983. Plaintiff is in the business of designing, producing, promoting, distributing and selling women's apparel to numerous department and national chain stores across the United States, as well as overseas. As business progressed, Plaintiff expanded by opening several different internal divisions. Each division at Plaintiff generally focuses on a different segment of the marketplace. One may be focused on women over 50 and another may be targeted at teens. Because of this internal separation, each division is designed to target and exploit its own unique trademark and clothing style.

16.     **The Creation of the Agora Division at Plaintiff.** In late 2005 and early 2006, Plaintiff decided to expand and add another division. At that time, Plaintiff did not have any line

of clothing that targeted the 30 – 40 year old female department store shopper. Plaintiff decided to develop a new line targeting this demographic with a new mark and merchandise.

17. Although Plaintiff conceived of a few marks to be used for this new division, the mark Agora stood out for it. Plaintiff was unaware of anyone in the United States using Agora on clothing and after its research failed to identify any clothing being sold here bearing that name.

18. Plaintiff decided to use this mark because the sister-in-law of Plaintiff's president had continuously used this mark on clothing in Korea for at least 15 years with great commercial success.

19. **Plaintiff Hires Marc Gardner.** It was about this time when Plaintiff began having discussions with Gardner about becoming the primary salesman for this new division. Gardner had significant experience with sales in the apparel industry. At the time, Plaintiff believed that Gardner's relationships with buyers would allow Plaintiff to accelerate the development phase of the division and begin to realize significant sales more quickly than the average developing brand.

20. Gardner was hired by Plaintiff in or about March, 2006 as the primary salesman for the Agora Division with Plaintiff. Gardner's compensation was a commission, based on the sale of goods from this new division, as well as reimbursement or payment of certain expenses by Plaintiff. In return, Gardner was to work exclusively with Plaintiff.

21. **Plaintiff Decides on Agora.** Although Plaintiff already strongly preferred the Agora mark over the other potential marks, given Gardner's apparel industry experience, Plaintiff wanted to confer with Gardner and get his feedback before committing to a mark. In

March 2006, Plaintiff provided several marks and designs for each mark to Gardner via a letter. One of the marks provided to Gardner in this letter was the Agora mark.

22. Around this time, Plaintiff also asked Gardner whether he was aware of anyone else using the Agora mark and he answered that he was unaware of anyone.

23. Plaintiff decided that Agora would be the primary brand within Plaintiff's new division. While Plaintiff did not object to using other marks in addition to "Agora," Plaintiff wanted Agora to be the primary focus, given the success in Korea and the fact that the Agora mark was not being used in the United States in connection to apparel.

24. Plaintiff eventually developed and decided on how the Agora mark would appear on the label.

25. **Sales and Success of the Agora Division**. The first sale of garments bearing the Agora mark occurred on or about July 2006. Since that time, Plaintiff has continuously sold the garments bearing the Agora mark to many stores, such as J.C. Penny, Stein Mart, Marshalls, Winners, and T.J. Maxx, among many others.

26. The retail economy since September 2008 has been abysmal and caused many retailers and manufacturers to close their doors. However, from 01 October 2007 – 30 September 2008 the Agora division had approximately $8,000,000.00 in sales. Plaintiff expects the Agora Division sales for this fiscal year (10/1/08 to 9/30/09) to be nearly $7,000,000.00. As can be seen, the Agora Division has been quite successful, even in this economy.

27. Given the success of the Agora mark, Plaintiff decided to protect its intellectual property by formally registering the Agora trademark with the U.S. Patent and Trademark Office. Plaintiff submitted a trademark application in early April 2009, which was assigned serial number 77709011.

28. **Troubles Begin with Gardner.** In early 2009, significant troubles began to arise with Gardner. His expense advances began to grow disproportionately and he became more and more difficult to work with each day. Plaintiff suspected something was wrong but could not exactly pinpoint the problem at that time.

29. As such, Plaintiff believed that it was in the best interest of Plaintiff and Gardner to reduce their arrangement to a more formal writing to eliminate any confusion and to confirm certain deal points in the relationship. Several drafts were exchanged and eventually, an agreement dated 11 February 2009 was entered into.

30. Shortly thereafter, Plaintiff learned that Gardner was working for other companies, believed to be Piano. Plaintiff only discovered this when a buyer mistakenly sent a purchase order to Plaintiff for an item Gardner had shown them with a brand name that did not belong to any of Plaintiff's divisions.

31. After further investigation, Plaintiff learned that Gardner had been diverting samples from Plaintiff to other companies and/or providing Plaintiff samples that had been developed for other manufacturers to use. This was particularly troubling, as Plaintiff had paid all of Gardner's expenses to procure these samples.

32. After Plaintiff discovered this, relations between Plaintiff and Gardner became even more strained. Sales by Gardner had dropped significantly and Plaintiff was concerned that Gardner's focus and attention were now devoted to another manufacturer. As such, Plaintiff cut its ties with Gardner in or about June 2009.

33. **Rumors About Gardner's Post- Plaintiff Activities.** In or about July 2009, one of the salespeople that Gardner formerly employed was hired for the Agora Division at

Plaintiff. She informed Plaintiff that Gardner continued to use the Agora mark through his new employer Piano, even after Gardner and Plaintiff parted ways.

34. Given that Plaintiff had a reasonable basis to believe that Gardner, among others, was illicitly using the Agora mark, Plaintiff's attorneys sent cease and desist letters. Thereafter, counsel for Gardner responded on 04 August 2009 claiming in a conclusory fashion and without any substantiation that Gardner owned and conceived of the Agora mark.

35. Plaintiff again responded on 13 August 2009 to the inaccuracies in Gardner's response and reiterated its demand that Gardner immediately cease and desist from all use of the Agora mark. Plaintiff received no further communication from Gardner or his attorneys.

36. **Rumors Confirmed.** On or about 10 September 2009, Plaintiff received a package from a national retail department store. This department store is one of the largest purchasers of garments bearing the Agora mark. The package contained a sample bearing the Agora mark. Plaintiff, however, did not produce this sample. Gardner had produced the sample using the Agora mark and provided it to the department store.

37. **Defendants' Infringing Garments Appear in Stein Mart.** Given the receipt of the package from the particular department store, Plaintiff asked an employee to further investigate whether any stores selling infringing Agora garments. On 20 September 2009, Kim visited a location of Stein Mart. Plaintiff's employee reported that there were numerous garments bearing the Agora mark which were not produced by Plaintiff. The employee purchased a garment bearing Plaintiff's Agora mark with an RN Number of 99047. That RN Number is assigned to the Azidor.

38. Not only is Plaintiff continuing to be irreparably harmed by confusion in the marketplace due to the infringement of the Agora mark, Gardner, via his attorneys, filed an

{00121927;6}

opposition proceeding to Plaintiff's trademark application for the Agora before the Trademark Trial and Appeal Board. In the opposition, Gardner claims that he used the Agora mark prior to the application date.

39. **Additional Defendants.** Cinq, Ltd ("Cinq") has been included herein due to its use by Gardner to routinely conduct his business as a sales representative. It is believed that Cinq is being used to infringe upon the Agora mark via its relationship with Piano and Azidor. Azidor has had its charter suspended in California, but appears to be operating as a d/b/a in California and is somehow affiliated with Piano and its principals.

## COUNT I

### UNFAIR COMPETITION, TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(A), LANHAM ACT SEC. 43(A))

40. Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

41. Defendants had no license, permission, consent or authorization from Plaintiff to use the Agora mark, or any combination or derivative thereof, in connection with its business, or to hold itself out or represent itself as authorized to design, manufacture, promote, advertise, sell or distribute the Agora mark.

42. Despite the termination of any and all licenses, permission, consent or authorization by Plaintiff, Defendants have continued to design, manufacture, cause to be manufactured, advertise, promote, sell and distribute goods bearing the Agora mark, and wrongly continue to represent that it is authorized to sell goods bearing the Agora mark.

43. Defendants continued and intentional use of the Agora mark in connection with Defendants' business, as alleged above, constitutes use in interstate commerce and a false

designation of origin or false and misleading description or representation of goods in commerce, with knowledge of the falsity, which is likely to cause confusion, mistake and deception, and in commercial advertising and promotion, misrepresents the nature, characteristics, qualities and origins of Defendants' goods, services and commercial activities, within the meaning of, and in violation of 15 U.S.C. § 1125(a).

44. Among other things, Defendants' unauthorized use of the Agora mark and continued unauthorized sale of goods bearing the Agora mark is likely to lead others to the mistaken belief that Defendants' business originates from or is in some way authorized, licensed, associated or related to Plaintiff.

45. Plaintiff has been damaged and, unless Defendants are restrained and enjoined, will continue to be damaged by Defendants' aforesaid acts.

46. Plaintiff is being irreparably harmed by said unfair competition and has no adequate remedy at law for Defendants' continuing unfair competition, and therefore Defendants must be restrained and enjoined from continuing said acts.

47. At all times relevant, Defendants have had actual and constructive notice of the Agora mark. Accordingly, the infringing and tortious acts of Defendants are intentional, willful and deliberate.

48. Accordingly, Plaintiff is entitled to a permanent injunction against Defendants, as well as all other remedies available, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

## COUNT II

### COMMON LAW TRADEMARK & TRADENAME INFRINGEMENT

49. Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

50. By reason of the foregoing, Defendants began infringing, and continue to infringe on the Agora mark by manufacturing, causing to be manufactured, advertising, promoting, offering for sale and selling, without Plaintiff's consent, goods bearing the Agora mark.

51. Moreover, Defendants have acted maliciously, fraudulently, deliberately and willfully.

52. Defendants' aforesaid conduct and infringement of Plaintiff's rights in the Agora mark is willful, because despite the fact that Defendants are aware of Plaintiff's interest in the Agora mark, they nevertheless continue to manufacture, cause to be manufactured, advertise, promote, offer for sale, and sell, without Plaintiff's consent, goods bearing the Agora Mark.

53. Defendants' use of infringing names and marks, without Plaintiff's permission or authority, has been and continues to be in a manner likely to cause confusion, to cause mistake and to deceive.

54. Defendants continue to infringe upon the Agora mark.

55. Plaintiff is being irreparably harmed by Defendants' acts and has no adequate remedy at law for Defendants' continued infringement, which will continue to irreparably harm Plaintiff unless Defendants are restrained and enjoined from continuing said acts.

56. Accordingly, Plaintiff is entitled to a permanent injunction against Defendants, as well as all other remedies available, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

## COUNT III
## STATE UNFAIR COMPETITION

57. Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

58. Defendants' unlawful conduct is being continued willfully, has caused actual confusion, and is likely to continue to confuse, mislead, and deceive purchasers, members of the public, and others, and create in the mind of the public the false impression that Plaintiff is responsible for or affiliated with the Defendants and their products containing the infringing Agora mark, all to Plaintiff's immediate and irreparable harm, as alleged above.

59. Defendants' wrongful conduct described herein constitutes unfair competition, and if continued, will cause irreparable harm to Plaintiff, its goodwill and its tradenames, trademarks, and to its business, general reputation, and reputation in the trade. Such conduct by Defendants constitute a violation of the common law of the State of New York.

60. The aforesaid acts of Defendants constitute inequitable conduct, unfair trade practices, and unfair competition under the common law of the State of New York in that Defendants have thereby misappropriated Plaintiff's goodwill, development and promotion of its distinctive tradenames and trademarks, and there is a likelihood of confusion among consumers.

61. Plaintiff has been damaged and, unless Defendants are restrained and enjoined, will continue to be damaged by Defendants' aforesaid acts.

62. Plaintiff is being irreparably harmed by said unfair competition and has no adequate remedy at law for Defendants' continuing unfair competition, and therefore Defendants must be restrained and enjoined from continuing said acts.

63.  Accordingly, Plaintiff is entitled to a permanent injunction against Defendants, as well as all other remedies available, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

### COUNT IV
### NEW YORK GENERAL BUSINESS LAW § 360(1)
### NEW YORK TRADEMARK DILUTION

64.  Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

65.  Defendants' acts, as described above, have caused damage to Plaintiff by tarnishing Plaintiff's valuable reputation and blurring the distinctiveness of the Agora mark in violation of New York General Business Law § 360(1).

66.  Plaintiff does not have an adequate remedy at law, and will continue to be damaged by Defendants' aforesaid acts unless this Court enjoins Defendants from such fraudulent business practices.

67.  Accordingly, Plaintiff is entitled to a permanent injunction against Defendants, as well as all other remedies available, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

### COUNT V
### NEW YORK GENERAL BUSINESS LAW § 349
### UNLAWFUL DECEPTIVE ACTS AND PRACTICES

68.  Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

69.  Defendants, without Plaintiff's authorization or consent, and having knowledge of Plaintiff's well-known and prior rights in the Agora mark, have distributed, advertised, offered

for sale and/or sold non-authorized products employing the Agora mark to the consuming public in violation of New York General Business Law § 349.

70. Defendants' continued use of the Agora mark is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of Defendants' products, and is likely to deceive the public into believing that the products sold by Defendants originate from, are associated with, or are otherwise authorized by Plaintiff.

71. Defendants' deceptive acts and practices involve public sales activities of a recurring nature.

72. Plaintiff does not have an adequate remedy at law, and will continue to be damaged by Defendants' sale of non-authorized products unless this Court enjoins Defendants from such fraudulent business practices.

73. Accordingly, Plaintiff is entitled to a permanent injunction against Defendants, as well as all other remedies available, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

## COUNT VI
## DECLARATORY JUDGMENT

74. Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

75. An actual and substantial controversy exists concerning the parties' rights as to the Agora mark.

76. As is more fully described elsewhere herein, Defendant Gardner has improperly alleged that he is the creator and owner of the Agora mark.

77. Gardner has failed provide any details as to substantiate his right to the Agora mark.

78. As describe above, given that the Agora mark was conceived by the Plaintiff, and/or its representatives, the Agora mark belongs to Plaintiff.

79. Accordingly, Plaintiff seeks declaratory judgment ordering that the Agora mark belongs to Plaintiff and that Defendants have no right, title or interest to the Agora mark and further ordering the United States Patent and Trademark Office to dismiss the opposition of Gardner entered therein with prejudice.

## COUNT VII
## BREACH OF CONTRACT

80. Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

81. As was described herein, Gardner was required to exclusively work for Plaintiff and to devote all of his time and attention towards the Plaintiff's products.

82. Gardner failed to do such, and spent considerable time and resources towards other manufacturers products in violation of the agreement between the parties.

83. Furthermore, as part of Gardner's compensation, Gardner was to be reimbursed for expenses incurred in the regular course of his employment with Plaintiff.

84. Gardner, however, was not working exclusively for Plaintiff on these trips and as such, is not entitled to reimbursement for his expenses.

85. In addition, Plaintiff reasonably believes that it over-advanced commissions and expenses for Gardiner.

86. Accordingly, Plaintiff has been damaged by Defendant in an amount to be determined at trial but believed to reasonably exceed $500,000.00 together with interest, costs and attorneys fees and related expenses.

## COUNT VIII
## UNJUST ENRICHMENT

87. Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

88. Defendants continue to hold themselves out as the owners of the Agora mark, and have used, and continue to use the Agora mark to design, manufacture, promote, advertise, sell and distribute goods.

89. Defendants have received, accepted, and derived benefits by using the Agora mark and by holding themselves out as authorized to design, manufacture, promote, advertise, sell and distribute goods bearing the Agora mark.

90. Accordingly, Defendants have been unjustly enriched at Plaintiff's expense, by an amount equal to the profit that Defendants have earned using the Agora mark.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in its favor and against the Defendants on all counts of Plaintiff's Complaint, and enter an order:

(1) Granting Plaintiff preliminary and permanent injunctions enjoining Defendants and their subsidiaries and respective officers, agents, servants, employees, attorneys, and those in active concert or participation with each or any of them who receive actual notice of this order and judgment:

   a. From any further use of any name or trademark of Plaintiff which includes, but is not limited to the Agora mark; and

   b. From using any other mark, word, name, or symbol similar to Plaintiff's tradenames or trademarks, including the Agora mark, which is likely to cause confusion, mistake, or to deceive; and

      c. From infringing Plaintiff's rights in its aforesaid tradenames and trademarks, including the Agora mark, or using any colorable imitation thereof; and

      d. From selling, offering for sale, advertising or distributing any products bearing Plaintiff's tradenames or trademarks, including the Agora mark, or any colorable imitation thereof; and

      e. From unfairly competing with, injuring the business reputation of, or damaging the goodwill of the Plaintiff, and engaging in unfair competition that in any way that injures Plaintiff; and

      f. From continuing the acts of unfair competition herein complained of; and

      g. From continuing the unlawful deceptive acts herein complained of; and

      h. From further diluting and infringing Plaintiff's rights in its aforesaid tradenames and trademarks, including the Agora mark.

(2) Awarding Plaintiff all of Defendants' profits, if any, and Plaintiff's damages by reason of the acts of trademark infringement and unfair competition complained of; as well as all other remedies available, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees; and

(3) Awarding Plaintiff damages against Defendants for breach of contract in the amount of not less than $500,000.00, together with interest and expenses, including attorneys' fees and related disbursements; and

(4) Declaring that the Agora mark belongs to Plaintiff and that Defendants' have no right, title or interest to the Agora mark and further ordering the United States Patent and Trademark Office to dismiss the opposition of Gardner entered therein with prejudice; and

(5)  Awarding Plaintiff damages against Defendants for unjust enrichment by an amount equal to the profit that Defendants have earned using the Agora mark

(6)  Awarding Plaintiff its costs and disbursements, reasonable attorneys' fees and such other or further relief as the Court may deem just and proper.

Dated: New York, New York
    24 September 2009

BALLON STOLL BADER & NADLER, P.C.

By: Michael J Sheppeard (MS 9115)
*msheppeard@ballonstoll.com*
729 Seventh Avenue - 17th Floor
New York, New York 10019
Tel. (212) 575-7900
*Attorneys for Plaintiff*