UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
Mapssy International, Inc.,

        Plaintiff,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2-1-13

09-cv-8185 (ALC)

- against -

**OPINION & ORDER**

Marc Gardner, Cinq, Ltd, US Top Importers,
Inc. d/b/a Piano & Piano Sportswear, Bahram
Noparvar, Azidor, Inc., Marlon, Syrus
Fourouzesh, Brad Nowparvar, John Does 1-10,
And XYZ Corp. 1-10,

        Defendants/Counterclaim-Plaintiffs.

- against -

Sung Ho Choi,

        Additional Defendant on
        Counterclaims.
------------------------------------------------------------X

**ANDREW L. CARTER, JR., United States District Judge:**

        In this suit, Plaintiff Mapssy International, Inc. ("Mapssy" or "Plaintiff") seeks relief from the alleged breach of contract by Defendant Marc Gardner ("Gardner" or "Defendant") for over-advanced commissions. Gardner has counterclaims against Mapssy for breach of contract, unjust enrichment, violations of New York Labor Law § 190 *et seq.* for their refusal to pay him commissions owed and merchandising fees, and against counterclaim defendant Sung Ho Choi ("Choi") for violations of New York Labor Law § 190 *et seq.* and unjust enrichment.

        Defendants deny that they breached any contractual agreements.

1

## I. *PROCEDURAL HISTORY*

Plaintiff filed this action September 25, 2009, asserting eight claims that fall generally into two categories: unfair competition and trademark infringement claims and contract-related claims. *See* Compl. In their pretrial brief, Plaintiff agreed to withdraw all claims sounding in trademark law.

### A. *Contract-related Claims*

Plaintiff asserted claims against Gardner for breach of contract and unjust enrichment. Compl. ¶¶ 80–86, 87–90. Specifically, Plaintiff alleged that Gardner breached his contract by failing to work exclusively for Plaintiff and receiving over-advanced commissions and reimbursement for expenses that he was not entitled to. Plaintiff also asserted claims for unjust enrichment against Gardner. Lastly, Gardner alleged that Plaintiff violated New York Labor Law § 190, *et seq.*, by refusing to pay him commissions owed within the statutorily prescribed time period.

### B. *Claims Remaining for Trial*

This matter was tried before the Court as a one-day bench trial on January 14, 2013. At the close of trial, the Court advised the attorneys for the parties that it would issue a ruling soon.

In any bench trial, the trial judge, as the finder of fact, has to evaluate the credibility of the witnesses that testify, based on the witnesses' demeanor, any previous inconsistent statements made by a witness prior to and during the witness's trial testimony, the witness's explanation for any such inconsistent statements as well as the documentary evidence in the record. The United States Supreme Court has stated that "[t]rial judges have the unique

2

opportunity to consider the evidence in the living courtroom context, while appellate judges see only the cold paper record." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 438, 116 S.Ct. 2211, 2225, 135 L.Ed.2d 659 (1996) (citations omitted). The United States Court of Appeals for the Second Circuit has observed that "the full flavor of a hearing cannot be sensed from the sterile sheets of a transcript." *ABC, Inc. v. Stewart*, 360 F.3d 90, 100 (2d Cir. 2004) (*quoting Soc'y of Prof'l Journalists v. U.S. Sec'y of Labor*, 616 F.Supp. 569, 578 (D. Utah 1985)). The Court's findings of fact that follow are in no small part based on the trial judge's view of the credibility of the witnesses that testified, based on their trial testimony, as well as the documentary evidence and the explanation of, or reconciliation or lack thereof, of any previous inconsistent statements, written or oral, made by a witness.

The first witness to testify on January 14, 2013 in plaintiff's case-in-chief was former Mapssy production manager Young Choe. The second witness to testify was the sole shareholder of Mapssy, Sung Ho Choi, who is also the counterclaim defendant. The third witness to testify was defendant Marc Gardner.

In sum the Court found the testimony of Gardner irreconcilable with the documentary evidence despite being given the opportunity, in some instances more than one opportunity, to explain the contradictions.

The Court found Choe and Choi's testimony to be credible, generally consistent and thoughtful and deliberate.

In any trial, civil or criminal, there are two types of evidence the trier of fact may consider: direct evidence, such as testimony of an eye witness, and indirect or circumstantial

3

evidence, the proof of circumstances that tend to prove or disprove the existence or nonexistence of certain other facts. The law makes no distinction between direct and circumstantial evidence. In a civil case such as this one, depending on the nature of the claim, the law simply requires that the trier of fact find the facts from a preponderance of all the evidence or by clear and convincing evidence. In this case, plaintiff's claims had to be proven by a preponderance of the evidence. Defendant's affirmative defenses had to be proven by clear and convincing evidence.

The Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). In some instances a finding of fact may also be a mixed conclusion of law and in other instances a conclusion of law may include findings of fact.

For the reasons set forth below, the Court concludes that Plaintiff has proved their contract claim by a preponderance of the evidence.

## II. *FINDINGS OF FACT*

### A. *The Parties*

1. Plaintiff Mapssy is a corporation, maintaining a principal place of business in New Jersey. Plaintiff is in the business of designing, producing, promoting, distributing and selling women's apparel to numerous department and national chain stores across the United States and overseas.

2. Defendant Marc Gardner is an individual resident of New York. Gardner was a "merchandiser" and sales representative. In 2006, Gardner approached Mapssy about developing a Missy blouse line. Mapssy retained Gardner as a merchandiser and independent commissioned sales representative for Agora, a division owned by Mapssy.

3. Counterclaim Defendant Sung Ho Choi is an individual resident of New Jersey.

**B.** *Commission Dispute*

4. As an independent commission salesperson, Gardner was not on Mapssy's payroll. Gardner was compensated based on commission income generated by sales of clothing for Mapssy, plus overages. Gardner's compensation was determined by one formula for sales to department stores and boutiques, and a second formula for sales to discount stores with zero-return policies, such as Marshall's and Ross. He was not reimbursed for expenses, but was to receive a draw out of which he was to pay his expenses. In or about September 2007, Mapssy agreed to provide Gardner a monthly draw against future commissions.

5. Mapssy and Gardner formalized the commission formula in an October 25, 2007 commission agreement. Ex. 45. The commission would be based on the "base price" also known as the Marshall Price. According to Gardner, most sales were priced higher than the Marshall Price. Gardner testified that the Marshall Price would apply to big stores, including TJ Maxx, Marshall, Burlington, Winners, Ross, Dress Barn, Laura, Melanie Lynn, Mervyns and any other store that ordered 200 items or more. Gardner testified that his commission calculation would begin with 90% of the Marshall Price to get a Net Marshall Price (NMP). Gardner testified that he would be entitled to a commission of anything sold above the NMP.

6. Gardner signed his commission statements and receipts. Ex. 28.

7. This dispute concerns breach of contract over Gardner's commissions. The parties stipulated that Mapssy paid Gardner $1,639,859.74 while the subtotal of agreed commission to Gardner is $1,418,384.30. The difference is $221,475.44.

8. At trial, Choe, Choi, and Gardner offered two very different versions of Gardner's commission arrangement.

9. Choe testified that Gardner promised to pay air freight and private labels rather than pass it to customers.

10. Gardner claims that Mapssy, by and through Choi, agreed to pay Gardner a "Merchandising Fee" of 5% of the sales of the Sears line, which he alleges was a success. Gardner claims that he was supplied insufficient information from Mapssy to calculate Merchandising Fees and he did not receive any payment for Merchandising Fees. Choi and Choe testified that this line failed.

11. Choe testified that chargeback on commission items, the largest line item on Gardner's account, represents the product that was later returned by customers and constitutes a refund of the unearned commission that Gardner collected. Choe testified that Gardner was fully aware of these items, specifically agreed to them and never objected when advised of these amounts.

12. Choe and Choi testified that neither Mapssy nor Choi threatened Gardner, and Gardner had the ability to suggest other alternatives or even walk away from the arrangement. They testified that Gardner never contacted Mapssy or Choi to say he objected to the commission formulas.

13. According to Gardner, he complained about his commissions constantly to Choe and Choi.

14. Mapssy also deducted $1 for operating costs. Ex. 45. Gardner was entitled to money collected in excess of that dollar.

6

15. Gardner argues that Mapssy's one-dollar charge from each garment sale as an overhead expense to Mapssy was made unilaterally and without advanced notice to him beginning in March 2008. He argues that Mapssy deducted undocumented charge-backs from his commissions, which included customer returns for defective merchandise created by Mapssy and disputed payments to Isabella and Laura.

16. On February 11, 2009, Mapssy and Gardner reduced their arrangement to a formal writing which incorporated the commission rules in order to eliminate any confusion and to confirm certain deal points. Ex. 25. If Gardner did not object within 30 days for the month's commission amount after he received the statement, the commission amount is considered acceptable and "undisputable."

17. Gardner signed the retention agreement, which defines Gardner's role as that of an independent contractor. The Retention Agreement clearly refers to the established "rules" to determine a commission formula agreed upon by the parties.

18. Mapssy used a negative commission whereby Mapssy and Gardner would split the loss if items sold for less than 90% of the Marshall's Price.

19. Choi testified that the use of negative commission assured him that Gardner would not over order merchandise simply to insure there was a product available for him to sell.

20. In email, Gardner expressly acknowledged the negative commission and corrected Choe's computation of the negative commission. Ex. 29.

21. Gardner testified that he reported his commission dispute to Choi and Choe and they had ceased supplying him with the invoices from which commission statements could be prepared.

22. However, Choi and Choe credibly testified at trial that Gardner never complained to them about the $1 up-charge or the negative commission and he readily signed subsequent commission statements produced by Mapssy.

23. Choe and Choi testified that Gardner never objected to the course of the parties' relationship and freely accepted commission advances without objection to the terms of the commission calculation.

24. Gardner maintained his own showroom and staff and continued to sell items other than Missy blouses for other companies.

25. Gardner made all of his own sales calls and attended sales meetings without the guidance of, or attendance by Mapssy.

26. Gardner maintained a staff of two commission-based sales representatives who assisted Gardner in his sales efforts.

27. Mapssy and Gardner stopped working together in or about April 2009.

28. The Court finds Choi and Choe's testimony more credible than Gardner's testimony as to the compensation arrangement. Gardner was unable to produce persuasive evidence to corroborate his account of the arrangement. Evidence lending credibility to Choi and Choe's version of events includes the written agreement.

29. The documents produced are consistent Choi and Choe's testimony.

## III. *CONCLUSIONS OF LAW*

### A. *Contract-related Claims*

1. *Mapssy's Contract Claim against Gardner*

New York law requires that a plaintiff alleging breach of contract show "(l) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui,* 91 F .3d 337, 348 (2d Cir. 1996). Moreover, to prevail on such a claim, a Plaintiff "must provide specific allegations as to the agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue." *Abu Dhabi Commercial Bank v. Morgan Stanley,* 651 F.Supp.2d 155, 183 (S.D.N.Y. 2009).

For the reasons set forth in the findings of fact, the evidence demonstrates that Gardner freely signed the commission agreement, his commission statements, and receipts. Neither Mapssy nor Choi threatened Gardner. Gardner represented other manufacturers and had the ability to suggest alternatives or cancel the arrangement. Gardner did not contact Mapssy or Choi to object to the commission formulas. His acceptance of the payments, without objection, constitutes ratification of those arrangements rendering his duress defense meaningless.

The Court finds that Mapssy has proved the existence of a contractual agreement with Gardner and over-advanced commissions to Gardner. Accordingly, the Court finds that Gardner is liable for breach of contract. The parties stipulated that Gardner owes Mapssy **$221,475.44**

before the disputed numbers stemming from Mapssy's additional claims and Gardner's counterclaims.

Mapssy is entitled to a chargeback on paid commissions, **$50,648.69**, because Gardner collected these unearned commissions in advance even though the product was later returned by customers and refunded.

The sum of Mapssy's entitlements is **$221,475.44 + $50,648.69 = $272,124.13.**

2. *Gardner's Breach of Contract Claim against Mapssy*

Gardner argues that the commissions due to him quickly exceeded his monthly draw from Mapssy. The Court finds that Gardner's acceptance of his commission payments without objection constitutes ratification of the commission agreement. Thus, Gardner is not entitled to credit for negative commissions of **$214,390.02** or for the $1 up-charge of **$808,857.49**.

Gardner is not entitled to credits for Sears in the amount of **$252,624.59** because the evidence shows that this line failed. The parties stipulated that Gardner would receive $2,646 for a commission on certain styles that Mapssy sold to Sears, which is reflected in a deduction from Mapssy's stipulated entitlement.

A personal guarantee must be in writing. N.Y. General Obligations Law § 5-701(a)(2); *see also Kleartex (U.S.A.), Inc. v. Matex, Inc.*, 1992 U.S. Dist. LEXIS 5597 (S.D.N.Y. 1992); *Brown Bark II L.P. v. Weiss Mahoney, Inc.*, 90 A.D.3d 963, 964-965 (2d Dep't 2011). Even though Gardner personally guaranteed indebtedness from Isabella and Laura to Mapssy in writing, which Mapssy was unable to collect, the Court does not find Gardner is liable for the

10

accounts receivable total of **$35,220.63 + $87,112 = $122,332.63**. Gardner personally guaranteed payment merely to promote sales to stores.

The Court also finds that Gardner should not be responsible for label and air freight charges (**$567 + $28,963.30 = $29,530.30.**) since Mapssy customarily absorbed these costs of business.

3. *Gardner's Unjust Enrichment Claim against Mapssy and Choi*

To prevail on an unjust enrichment claim under New York law, "a plaintiff must establish: (1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that 'equity and good conscience' require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). The measure of damages for an unjust enrichment claim is restricted to the "reasonable value" of the benefit conferred upon the defendant. *Giordano v. Thomson*, 564 F.3d 163, 170 (2d Cir. 2009).

Gardner failed to demonstrate that Choi was unjustly enriched. Gardner received the reasonable value of the benefit his work conferred on Mapssy. Accordingly, his claim for unjust enrichment fails.

4. *Gardner's Labor Law Claim against Mapssy and Choi*

Under New York Labor Law § 191-a(d), a sales representative is an independent contractor who contracts to solicit orders for a manufacturer. Such a manufacturer is deemed a "principal" under Labor Law § 191-a(c). Personal liability is not imputed to an officer of a principal that is liable to a sales representative. *AHA Sales*, 2008 N.Y. Slip Op. 8684, at 1.

The FLSA broadly defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "Because the statute defines employer in such broad terms, it offers little guidance on whether a given individual is or is not an employer." *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 139 (2d Cir. 1999). "In answering that question, the overarching concern is whether the alleged employer possessed the power to control the workers in question, with an eye to the 'economic reality' presented by the facts of each case." *Id.* (internal citations omitted). This "economic realities" test includes four non-exclusive factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (internal citations and quotations omitted). None of these factors "standing alone is dispositive. Instead, the 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive." *Id.* (internal citations and quotations omitted). In considering these factors, courts should understand that the FLSA employer standard "does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees." *Id.* Instead, "[c]ontrol may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA." *Id.* In addition, "operational control" over the plaintiffs is relevant. *Id.*

The question of whether Mapssy or Choi is an FLSA "employer" is a "mixed question of law and fact," involving "the application of a legal standard to a particular set of facts." *Zheng v. Liberty Apparel Co. Inc. ("Zheng II")*, 617 F.3d 182, 185–86 (2d Cir. 2010) (internal citations and quotations omitted) (using different test to determine whether manufacturer served as "employer" for contractor's employees). Only "the ultimate decision as to whether a party is an

employer," is a legal question. *Zheng v. Liberty Apparel Co. Inc. ("Zheng I")*, 355 F.3d 61, 76 (2d Cir. 2003). The "historical findings of fact that underlie each of the relevant factors" and the "findings as to the existence and degree of each factor" are factual questions. *Zheng*, 355 F.3d at 76.

Gardner suggested the blouse styles and designs, and used his own formulas to tell Mapssy how many pieces of each style to produce. Gardner maintained his own showroom, customers and staff independent of Mapssy. He made all his sales calls and attended sales meetings by himself. Gardner was not on the Mapssy payroll, and frequently requested that Mapssy pay various obligations of his on his behalf instead of paying him directly. Mapssy paid Garder's phone bills, garage, rent, etc. When the parties' relationship deteriorated and they ceased working together, Gardner simply picked up and took his business to another factory. He continued to make sales to customers on account of his new manufacturer and the other manufacturers he worked with on non-Missy lines during his relationship with Mapssy. Gardner had his own business with managerial activities.

For the foregoing reasons, the Court finds that Gardner is an independent contractor, not an employee. The Court finds no liability to Mapssy or Choi under New York Labor Law.

## IV. *CONCLUSION*

For the foregoing reasons the Court will enter judgment in favor of Plaintiff Mapssy, and against defendant Gardner on Plaintiff's contract claim in the sum of **$272,124.13**. The Court awards no damages to Plaintiff for its trademark law and unfair competition claims since Plaintiff dismissed these claims.

13

The Court finds for Plaintiff on Defendant Gardner's claim for breach of contract. Further, the Court will enter judgment in favor of Plaintiff and Counterclaim Defendant Choi on Gardner's common law unjust enrichment and New York Labor Law claims. Thus, Gardner is not entitled to damages from Mapssy or Choi. The Clerk of the Court is directed to close the case.

This constitutes the decision and order of the Court.

Dated: New York, New York
February 1, 2013

SO ORDERED.

_____
Andrew L. Carter, Jr.
United States District Judge